UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

**FEDERAL TRADE COMMISSION,**

            **Plaintiff,**

    **vs.**

**MICHAEL BRUCE MONEYMAKER, a/k/a Bruce Moneymaker, Mike Smith, and Michael Bruce Millerd, individually, as an officer and director of the corporate defendants, and also doing business as Fortress Secured,**

**DANIEL DE LA CRUZ, individually, as an officer and director of the corporate defendants, and also doing business as Fortress Secured,**

**BELFORT CAPITAL VENTURES, INC., a corporation,**

**DYNAMIC ONLINE SOLUTIONS, LLC, a limited liability company,**

**HSC LABS, INC., a corporation,**

**RED DUST STUDIOS, INC., a corporation,**

**SEASIDE VENTURES TRUST, individually and as an officer and director of the corporate defendants, and**

**JOHN DOE NO. 1, in his capacity as trustee of Seaside Ventures Trust,**

            **Defendants.**

**Case No. 2:11-cv-00461-JCM-RJJ**

## STIPULATED ORDER FOR INJUNCTION AND MONETARY JUDGMENT

    Plaintiff Federal Trade Commission ("FTC" or the "Commission"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), filed a Complaint

for a Permanent Injunction and Other Equitable Relief (the "Complaint"), including consumer redress, and moved *ex parte* for a temporary restraining order and for an order to show cause why a preliminary injunction should not be granted pursuant to Rule 65(b) of the Federal Rules of Civil Procedure on March 29, 2011.  This Court entered a temporary restraining order on March 29, 2011 (the "TRO") and granted a preliminary injunction on April 15, 2011 (the "PI").  The Commission and the Defendants stipulate to the entry of this Stipulated Order for Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, it is ORDERED as follows:

**FINDINGS**

1.      This Court has jurisdiction over the subject matter of this case and all of the parties;

2.      Venue is proper as to all parties in this District;

3.      Defendants' activities are "in or affecting commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44;

4.      The Complaint states claims upon which relief may be granted against Defendants, under Section 5 the FTC Act, 15 U.S.C. § 45;

5.      Defendants engaged in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act.  Specifically, Defendants acquired consumers' bank account information when those consumers applied for payday loans online and then, without consumers' consent, debited their bank accounts.  When consumers sought cancellations and refunds, Defendants made various misrepresentations to consumers to prevent them from pursuing a cancellation or refund;

6.      Plaintiff and Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order; and

7.      Defendants waive any claim that they may hold under the Equal Access to Justice Act, 28

Page 2 of 24

U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorneys fees.

## DEFINITIONS

For the purposes of this Preliminary Injunction, the following definitions apply:

1. **"Assisting Others"** includes but is not limited to:  (a) performing customer service functions, including but not limited to receiving or responding to consumer complaints; (b) developing or providing or arranging for the development or provision of sales scripts and other marketing materials; (c) providing names of, or arranging for the provision of names, of potential customers; (d) performing marketing services of any kind; or (e) providing any other service to a third party that could result in payment such as a salary, fee, or commission, whether or not there is an employment relationship between the Defendant and the third party;

2. **"Account Information"** means any consumer account number, including but not limited to account numbers for a credit card, debit card, checking, savings, share or similar account, as well as phone numbers or other utility account information;

3. **"Clear and Conspicuous"** or **"Clearly and Conspicuously"** mean that:

   A. In textual communications (e.g., printed publications or words displayed on the screen of an electronic device), the disclosure shall be of a type size and location sufficiently noticeable for an ordinary consumer to read and comprehend the disclosure, in print that contrasts with the background on which it appears;

   B. In communications disseminated orally or through audible means (e.g., radio or streaming audio), the disclosure shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend the disclosure;

   C. In communications disseminated through video means (e.g., television or

streaming video), the disclosure shall be in writing in a form consistent with Subsection A of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend the disclosure;

D. In communications made through interactive media such as the internet, online services, and software:

    i. The disclosure shall be unavoidable and presented in a form consistent with Subsection A of this definition in addition to any audio or video presentation of it; and

    ii. "In close proximity" shall mean on the same webpage, online service page, or other electronic display, and proximate to the triggering representation, and shall not be accessed or displayed through hyperlinks, pop-ups, interstitials, or other means;

E. In communications that contain both audio and visual portions, the disclosure shall be presented simultaneously in both the audio and visual portions of the communication. Provided however, that in any communication disseminated solely through visual or audio means, the disclosure may be made through the same means in which the communication is presented;

F. In all instances, the disclosure shall be presented prior to the consumer incurring any financial obligation, in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication with the consumer;

4. **"Corporate Defendants"** means Belfort Capital Ventures, Inc., Dynamic Online Solutions, LLC, HSC Labs, Inc., Red Dust Studios, Inc., and Seaside Ventures Trust and their

successors and assigns;

5. **"Credit-Related Goods or Services"** means any good, program, or service that is advertised, offered for sale, or sold to consumers as a method by which consumers may establish or obtain any extension of credit or credit device, including, but not limited to, credit cards, loans, or financing, or as a method to consolidate or liquidate debts;

6. **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination;

7. **"Individual Defendants"** means Michael Bruce Moneymaker and Daniel De La Cruz;

8. **"Negative Option Feature"** means, in an offer or agreement to sell or provide any good(s) or service(s), a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller or provider as acceptance of the offer;

9. **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC");

10. **"Receiver"** means the Receiver appointed in the TRO and PI. The term "Receiver" also includes any deputy receivers or agents as may be named by the Receiver;

11. **"Receivership Defendants"** means Belfort Capital Ventures, Inc., Dynamic Online Solutions, LLC, HSC Labs, Inc., Red Dust Studios, Inc., and their subsidiaries, affiliates, divisions, successors, and assigns, and includes fictitious names under which they do business, including but not limited to Centralized Customer Service, Uniguard, Freedom Subscription, Illustrious Perks, Select Platinum Credit, Kryptonite Credit, New Economy Planning, Inc., FK Grant Family, LLC, Refund Express, Tabula Rasa, Inc., SVM, SVM, Inc., SVM Group, Inc., Fortress Secured, Fortress Secured, Inc., Glamouruous Credit, Vanquisher Benefits, Champion Credit, Pioneer Power, Star Bens, Primary Benefits, Sublime Membership, Noble Subscription,

and Top Dog Credit Lines; and

12.    **"Secured Loan Product"** means any loan, extension of credit, or other good or service for which it is represented that a consumer is receiving a loan, extension of credit, or the equivalent, where the consumer will not be able to use or access any portion of the loan, extension of credit, or the equivalent.

## I.
## BAN ON NEGATIVE OPTION GOODS AND SERVICES

**IT IS THEREFORE ORDERED** that Defendants are permanently restrained and enjoined from the advertising, marketing, promoting, offering for sale, sale, or distribution of, or Assisting Others in the advertising, marketing, promoting, offering for sale, sale, or distribution of any good or service that involves a Negative Option Feature.  Nothing in this Order shall be read as an exception to this Section I.

## II.
## BAN ON SECURED LOAN PRODUCTS

**IT IS FURTHER ORDERED** that Defendants are permanently restrained and enjoined from the advertising, marketing, promoting, offering for sale, sale, or distribution of, or Assisting Others in the advertising, marketing, promoting, offering for sale, sale, or distribution of any Secured Loan Product.

## III.
## PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, and employees, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, including by Assisting Others, in connection with the advertising, marketing, promoting, or offering for sale of any good or service are permanently restrained and enjoined from:

A.   Obtaining any consumer's Account Information from any person or entity other than the consumer;

B.   Charging or attempting to charge any consumer for any good or service, unless all material terms of the transaction are Clearly and Conspicuously disclosed before the consumer provides his or her Account Information;

C.   Failing to disclose, Clearly and Conspicuously, and in close proximity to any request for Account Information:

  1.   the name of the seller or provider of the goods or services;

  2.   a description of the goods or services;

  3.   that the consumer will be charged for the goods or services;

  4.   the amount of each and every charge for the goods or services; and

  5.   the terms of the refund, cancellation, exchange, or repurchase policies, or, if there is no policy, that fact;

D.   Charging or attempting to charge any consumer unless the consumer has provided express informed consent.  For an internet transaction, express informed consent includes, at a minimum, requiring consumers to input their full Account Information in conjunction with providing an express written authorization.  The express written authorization must include the consumer's signature (the term "signature" includes a verifiable electronic or digital form of signature, to the extent such form of signature is recognized as a valid signature under applicable federal law or state contract law) in a manner that clearly evidences the consumer's express agreement to be charged the amount disclosed;

E.   Disclosing Account Information for any commercial purpose other than the

Page 7 of 24

transaction for the good or service for which the Account Information was obtained; and

F.    Failing to disclose Clearly and Conspicuously, all material terms of any loan, extension of credit, or any good or service that purports to improve a consumer's credit score, credit worthiness, credit standing, or credit capacity.

## IV.
## PROHIBITED REPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, and employees, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, or offering for sale of any good or service are permanently restrained and enjoined from misrepresenting or Assisting Others in misrepresenting, expressly or by implication:

A.    That they will use consumers' authorizations to further consumers' payday loan applications;

B.    The purpose for which a consumer's Account Information will be used;

C.    Any material aspect of the nature or terms of refund, cancellation, exchange, or repurchase policies including:

    1.    That consumers provided their express informed consent to purchase a good or product;

    2.    That consumers agreed to pay charges associated with Defendants goods or services;

    3.    That consumers are entitled to a refund only if they ask for a refund during a trial period; or

4.      That Defendants will provide a refund;

D.      The benefits, performance, or efficacy of such good or service, unless the representation is true and, at the time that the representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates the representation;

E.      That the consumer has contacted a third party customer service or call center;

F.      That the consumer has contacted a consumer rights organization;

G.      Any affiliation with a bank or bank processing center;

H.      The status of any user or endorser of a product or service, including but not limited to misrepresenting that the user or endorser is an independent user or consumer of the product or service;

I.      Any affiliation with a customer of a financial institution, including but not limited to misrepresenting a right to verify the existence of a consumer account held by a financial institution or obtain the balance of a consumer account held by a financial institution;

J.      Any material term of a Credit-Related Good or Service;

K.      That a loan or Credit-Related Good or Service will increase a consumer's credit score or credit worthiness; and

L.      Any other fact material to consumers concerning any good or service, such as: the total costs; the timing or manner of any charge; any material restrictions, limitations, or conditions; or any material aspect of the performance, efficacy, nature, or benefits.

## V.
## MONETARY JUDGMENT AND SURRENDER OF ASSETS

**IT IS FURTHER ORDERED** that:

A.  Judgment in the amount of Nine Million, Nine Hundred Forty Six Thousand, Eight Hundred Sixty Nine Dollars ($9,946,869) is entered against the Individual Defendants and Corporate Defendants, jointly and severally;

B.  As to Defendant Daniel de la Cruz alone, the judgment shall be suspended subject to Subsections L., M., and N. below;

C.  Unless they have already done so, Defendants are required, in accordance with 31 U.S.C. § 7701, to furnish to the Commission their respective Taxpayer Identifying Numbers (Social Security numbers or Employer Identification Numbers), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government;

D.  The Commission is authorized to execute upon the judgment immediately and engage in discovery in aid of the judgment or execution, without further leave of court, pursuant to Fed. R. Civ. P. 69;

E.  The judgment set forth in Subsection A. above shall be offset by funds turned over to the Commission by the Defendants, pursuant to Subsection F. below, and all funds turned over to the Commission by the Receiver, pursuant to Section VI of this Order;

F.  Defendants shall, within 5 business days following the date of this order, by wire transfer in accordance with instructions provided by Plaintiff, transfer the following assets to the Commission:

   1.  All funds held by J.P. Morgan Chase Bank, NA in the name of Daniel or

Rhianon de la Cruz;

2. All cash on hand identified in Item 9 of the Federal Trade Commission Financial Statement of Individual Defendant signed by Daniel de la Cruz on April 8, 2011;

3. All funds held by J.P. Morgan Chase Bank, NA in the name of SVM, Inc.;

4. All funds held by Banco BICE S.A., Santiago, Chile in the name of Platino Interprise S.A.;

5. All cash or funds held in the name of the Ad Vitam Paramus trust; and

6. Any cash or funds held by or for the benefit of any Defendant, including funds held in any bank account or through a trust, not disclosed to the Federal Trade Commission in the Federal Trade Commission Financial Statement of Individual Defendant signed by Michael Bruce Moneymaker on April 7, 2011, the Federal Trade Commission Financial Statement of Individual Defendant signed by Daniel de la Cruz on April 8, 2011, the Financial Statement of Belfort Capital Ventures, Inc. signed by Michael Bruce Moneymaker on April 7, 2011, the Financial Statement of Dynamic Online Solutions, LLC signed by Michael Bruce Moneymaker on April 7, 2011, the Financial Statement of Red Dust Studios, Inc. signed by Michael Bruce Moneymaker on April 7, 2011, the Financial Statement of HSC Labs, Inc. signed by Michael Bruce Moneymaker on April 7, 2011, and the Financial Statement of Fortress Secured, Inc. signed by Michael Bruce Moneymaker on April 7, 2011.

G. Defendants shall take all steps necessary to immediately turn over the following

assets to the Receiver:

1.      The Receivership Defendants and all assets of the Receivership Defendants;

2.      Michael Bruce Moneymaker's interest in the 2010 Razor, quad runners with trailer identified in Item 17 of the Federal Trade Commission Financial Statement of Individual Defendant signed by Michael Bruce Moneymaker on April 7, 2011;

3.      The real property located at 39 Cassis Cir., Rancho Mirage, CA identified in the Property List attached to the Federal Trade Commission Financial Statement of Individual Defendant signed by Michael Bruce Moneymaker on April 7, 2011;

4.      The real property located at 761 Mandalay Beach Rd., Oxnard, CA identified in the Property List attached to the Federal Trade Commission Financial Statement of Individual Defendant signed by Michael Bruce Moneymaker on April 7, 2011; and

5.      Any other asset, other than cash, held by or for the benefit of Defendants with a fair market value greater than $50,000;

H.      The Receiver is hereby directed to market and sell those assets identified in Subsection G.  Defendants shall take all steps necessary to assist the Receiver in the sale of the assets and shall not add any encumbrances on the assets.  The sale of real property identified in Subsection G. shall be subject to court approval.  All taxes and fees assessed against the Defendants resulting from the sale of the assets shall not offset the amount of the judgment specified in Subsection A.;

Page 12 of 24

I.    In the event that it is necessary to execute additional documents to transfer or liquidate assets of the Receivership Defendants or any other assets that are to be surrendered under this Order, or to dissolve and wind down the Receivership Defendants, Defendants shall execute such documents within three business days of a request from the Receiver or the FTC;

J.    The Receiver shall remit the assets of the Receivership Defendants and the proceeds of the sale of all assets identified in Subsection G. in accordance with Section VI;

K.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order, as well as all assets in the Receiver's possession, and shall not seek the return of any assets;

L.    The Commission's agreement to, and the Court's approval of, the suspension of the judgment as to Defendant Daniel de la Cruz, is expressly premised upon the truthfulness, accuracy, and completeness of Defendant Daniel de la Cruz's sworn financial statement and related documents (collectively, "financial representations") submitted to the Commission, namely the Federal Trade Commission Financial Statement of Individual Defendant Daniel de la Cruz signed on November 4, 2011, including the attachments;

M.    The suspension of the judgment as to Defendant Daniel de la Cruz shall be lifted, if upon motion by the Commission, the Court finds:

    1.    that Defendant Daniel de la Cruz failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above;

or

2.    that Defendant Daniel de la Cruz is in default on any obligation under this Section;

N.    If the suspension of the judgment as to Defendant Daniel de la Cruz is lifted, the judgment shall become immediately payable, and the amount due shall be calculated as follows:  the judgment amount specified in Subsection A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), minus any payments previously made pursuant to this Section, plus interest computed from the date of entry of this Order pursuant to 28 U.S.C. § 1961.

O.    The facts as alleged in the Complaint shall be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or money judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case;

P.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order shall have collateral estoppel effect for such purposes; and

Q.    All money paid to the Commission pursuant to this Order shall be deposited into a fund administered by the Commission or its representatives to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the

Page 14 of 24

Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any monies not used for such equitable relief shall be deposited to the U.S. Treasury as disgorgement. Defendants shall have no right to challenge any actions the Commission or its representatives may take pursuant to this Section.

## VI.
## COMPLETION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that the Receiver shall continue to exercise full control of the Receivership Defendants and operate under all prior orders of the Court and:

A.    The Receiver is authorized to obtain a tax identification number for a Qualified Settlement Fund ("QSF"). On the effective date of this Order, the receivership estate will be taxed as a QSF as described in Internal Revenue Code Section 468B and Treasury Regulation Section 1.468B-1.

B.    The Receiver is directed to, within 180 days of the date of this Order, unless good cause is shown to extend the receivership beyond 180 days, file and serve on the parties a final report ("Final Report") and request for fees and expenses. The Final Report shall include the total amount of funds in the receivership estate. Any party may object within 15 days of receipt of the Final Report. Upon submission of the Final Report or upon this Court's Order for final payment, whichever is later, the Receivership shall terminate; and

C.    The Receiver is directed to transfer, after payment of the Receiver's compensation and expenses, all remaining funds of the receivership estate to the Commission, or its designee or agent, by wire transfer in accordance with

Page 15 of 24

directions provided by the Commission.

## VII.
## COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and those it employs are entitled to reasonable compensation for the performance of their duties pursuant to this Order and for the costs of actual out-of-pocket expenses incurred by them, from the receivership estate.

## VIII.
## COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall cooperate fully with the Receiver in: (A) pursuing any and all claims by the Receiver against other persons or entities; (B) assisting the Receiver in defending any and all actions or claims brought against the Receiver, the receivership estate, or any Receivership Defendant by other persons or entities; (C) executing any documents necessary to transfer assets or ownership interests to the Receiver; and (D) refraining from any act that would interfere with or impede the Receiver in execution of the performance of its duties.

## IX.
## LIFTING OF THE ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze against the assets of the Defendants pursuant to the Temporary Restraining Order entered by this Court on March 29, 2011 and by the Preliminary Injunction entered on April 15, 2011 shall be lifted for the sole purpose of transferring assets pursuant to Sections V and VI of this Order, and shall be dissolved upon the transfer of all such assets.

## X.
## PROHIBITION ON USE OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, and officers, agents, directors, servants,

employees, salespersons, and attorneys of Defendants, as well as all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, are hereby restrained and enjoined from:

      A.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account) that any Defendant obtained prior to entry of this Order in connection with the marketing or sale of any good or service, including those who were contacted or are on a list to be contacted by any Defendant; and

      B.    Failing to dispose of such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order.  Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

# XI.
## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

    A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury;

    B.    For 10 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls, and each Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  In any other business, such as those in which the Individual Defendant is an employee without any ownership or control, such Individual Defendant must deliver a copy of this Order to all principals and managers of the business before participating in conduct related to the subject matter of this Order.  Delivery must occur within 7 days of entry of this Order for current personnel.  To all others, delivery must occur before they assume their responsibilities; and

    C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

# XII.
## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the

Commission:

A.     One year after entry of this Order and annually thereafter for 5 years, each

Defendant must submit a compliance report, sworn under penalty of perjury;

1.     Each Defendant must:  (a) designate at least one telephone number and an

email, physical, and postal address as points of contact, which

representatives of the Commission may use to communicate with

Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet

addresses; (c) describe the activities of each business, including the

products and services offered, the means of advertising, marketing, and

sales, and the involvement of any other Defendant (which Individual

Defendants must describe if they know or should know due to their own

involvement); (d) describe in detail whether and how that Defendant is in

compliance with each Section of this Order; and (e) provide a copy of

each Order Acknowledgment obtained pursuant to this Order, unless

previously submitted to the Commission;

2.     Additionally, each Individual Defendant must:  (a) identify all telephone

numbers and all email, Internet, physical, and postal addresses, including

all residences; (b) identify all titles and roles in all business activities,

including any business for which such Defendant performs services

whether as an employee or otherwise and any entity in which such

Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B.    For 20 years following entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

    1.    Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order;

    2.    Additionally, each Individual Defendant must report any change in:  (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify its name, physical address, and Internet address, if any;

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing;

D.    Any submission to the Commission required by this Order to be sworn under

penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature; and

E.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin:  FTC v. Moneymaker, *et al.,* File No. X110021.

## XIII.
## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Corporate Defendant and each Individual Defendant for any business in which that Defendant, individually or collectively with any other Defendants, is a majority owner or directly or indirectly controls, must maintain the following records:

A.   Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

Page 21 of 24

C.     Customer files obtained after entry of this Order showing the names, addresses, telephone numbers, dollar amounts paid, and the quantity and description of goods or services purchased;

D.     Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

F.     A copy of each advertisement or other marketing material.

## XIV.
## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69;

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may

Page 22 of 24

1    have counsel present; and

2    C.    The Commission may use all other lawful means, including posing, through its

3          representatives, as consumers, suppliers, or other individuals or entities, to

4          Defendants or any individual or entity affiliated with Defendants, without the

5          necessity of identification or prior notice.  Nothing in this Order limits the

6          Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of

7          the FTC Act, 15 U.S.C. §§ 49, 57b-1.

8                                    **XV.**
                          **RETENTION OF JURISDICTION**

9
      **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for

10
    purposes of construction, modification, and enforcement of this Order.

11

12

13   **SO STIPULATED AND AGREED:**

     **FOR DEFENDANTS BELFORT CAPITAL**
14   **VENTURES, INC.; DYNAMIC ONLINE**
     **SOLUTIONS, LLC; HSC LABS, INC.;**
15   **RED DUST STUDIOS, INC.; AND**
     **SEASIDE VENTURES TRUST**

16

17   _____        Date: 1/10/12
     ALAN PICK, ESQ.
18   Pick & Boydston, LLP
     617 S. Olive Street, Suite 400
19   Los Angeles, CA 90014
     PHONE: (213) 624-1996
20   FAX: (213) 624-9074
     EMAIL: abp@pickboydston.com
21   COUNSEL FOR DEFENDANTS BELFORT
     CAPITAL VENTURES, INC.; DYNAMIC
22   ONLINE SOLUTIONS, LLC; HSC LABS,
     INC.; RED DUST STUDIOS, INC.; AND
23   SEASIDE VENTURES TRUST

24

25                          Page 23 of 24

1   **FOR DEFENDANT MICHAEL BRUCE**
    **MONEYMAKER, AND BELFORT**
2   **CAPITAL VENTURES, INC.;**
    **DYNAMIC ONLINE SOLUTIONS,**
3   **LLC; HSC LABS, INC.; RED DUST**
    **STUDIOS, INC.; AND SEASIDE**
4   **VENTURES TRUST**

5   _____    Date: _____
    MICHAEL BRUCE MONEYMAKER,
6   INDIVIDUALLY AND AS AN OFFICER
    OF BELFORT CAPITAL VENTURES,
7   INC.; DYNAMIC ONLINE SOLUTIONS,
    LLC; HSC LABS, INC.; RED DUST
8   STUDIOS, INC.; AND SEASIDE
    VENTURES TRUST

9

10   **FOR DEFENDANT DANIEL DE LA CRUZ**

11

    _____    Date: _____
12   DANIEL DE LA CRUZ

13

14   **FOR THE PLAINTIFF**
    **FEDERAL TRADE COMMISSION:**
15

16   _____    Date: 1/23/12
    ROBIN L. MOORE
17   Attorney
    Federal Trade Commission
18   Washington, D.C. 20580
    PHONE: (202) 326-2167
19   FAX: (202) 326-2558
    EMAIL: rmoore@ftc.gov
20

21                  **IT IS SO ORDERED**:

22                  _____
                   United States District Judge

23                  this _____ day of _____, 2011

24

25                    Page 24 of 24

1   **FOR DEFENDANT MICHAEL BRUCE**
    **MONEYMAKER, AND BELFORT**
2   **CAPITAL VENTURES, INC.;**
    **DYNAMIC ONLINE SOLUTIONS,**
3   **LLC; HSC LABS, INC.; RED DUST**
    **STUDIOS, INC.; AND SEASIDE**
4   **VENTURES TRUST**

5   _____        Date: /1-17-11
    MICHAEL BRUCE MONEYMAKER,
6   INDIVIDUALLY AND AS AN OFFICER
    OF BELFORT CAPITAL VENTURES,
7   INC.; DYNAMIC ONLINE SOLUTIONS,
    LLC; HSC LABS, INC.; RED DUST
8   STUDIOS, INC.; AND SEASIDE
    VENTURES TRUST
9

10  **FOR DEFENDANT DANIEL DE LA CRUZ**

11
    _____        Date: _____
12  DANIEL DE LA CRUZ

13

14  **FOR THE PLAINTIFF**
    **FEDERAL TRADE COMMISSION:**
15

16  _____        Date: _____
    ROBIN L. MOORE
17  Attorney
    Federal Trade Commission
18  Washington, D.C. 20580
    PHONE: (202) 326-2167
19  FAX: (202) 326-2558
    EMAIL: rmoore@ftc.gov
20
                                       **IT IS SO ORDERED**:
21
                                       _____
22                                     United States District Judge

23                                     this _____ day of _____, 2011

24

25                      Page 24 of 24

1   **FOR DEFENDANT MICHAEL BRUCE**
    **MONEYMAKER, AND BELFORT**
2   **CAPITAL VENTURES, INC.;**
    **DYNAMIC ONLINE SOLUTIONS,**
3   **LLC; HSC LABS, INC.; RED DUST**
    **STUDIOS, INC.; AND SEASIDE**
4   **VENTURES TRUST**

5   _____         Date: _____
    MICHAEL BRUCE MONEYMAKER,
6   INDIVIDUALLY AND AS AN OFFICER
    OF BELFORT CAPITAL VENTURES,
7   INC.; DYNAMIC ONLINE SOLUTIONS,
    LLC; HSC LABS, INC.; RED DUST
8   STUDIOS, INC.; AND SEASIDE
    VENTURES TRUST
9

10  **FOR DEFENDANT DANIEL DE LA CRUZ**

11
    _____         Date: 11/7/11
12  DANIEL DE LA CRUZ

13

14  **FOR THE PLAINTIFF**
    **FEDERAL TRADE COMMISSION:**
15

16  _____         Date: _____
    ROBIN L. MOORE
17  Attorney
    Federal Trade Commission
18  Washington, D.C. 20580
    PHONE: (202) 326-2167
19  FAX: (202) 326-2558
    EMAIL: rmoore@ftc.gov
20

21                                  **IT IS SO ORDERED**:

22                                  United States District Judge

23                                  DATED January 24, 2012

24

25                          Page 24 of 24